OGDENSBURG & LAKE CHAMPLAIN RAILROAD CO. *v.* BOSTON & LOWELL RAILROAD CORPORATION.

(*Circuit Court, D. Massachusetts.* September 30, 1880.)

CONTRACT—CONSTRUCTION.

In Equity. Demurrer.
*Sidney Bartlett* and *F. W. Palfrey*, for complainant.
*J. G. Abbott*, for defendant.

LOWELL, C. J. This bill is brought for an account, and for payment of such proportion of the money lent by the Ogdensburg & Lake Champlain Railroad Company, the complainant, under an agreement set out in the bill, as is due from the Boston & Lowell Railroad Corporation, the defendant.

The agreement is between the Northern Transportation Company of Ohio, of the first part, and Smith and Stark, who are to act as trustees, of the second part; the Vermont Central, Vermont & Canada, Northern, (of New Hampshire,) and Boston & Lowell Railroad Companies, of the third part; and the complainant of the fourth part. It is to be in force for 19 years from March 1, 1871.

The agreement recites that the several companies own most of the line of railroad between Ogdensburg and Boston; that it is very important for them to have a regular line of steamers from western cities and towns to Ogdensburg; that the party of the first part was incorporated to furnish such a line, but is embarrassed, and may be unable to carry out its purpose; that, for securing this end, it is for the interest of the several parties of the third and fourth parts to lend to the parties of the second part a portion of the gross receipts from passengers and freight brought by such steamers. It appears, afterwards, that this object was expected to be attained by investing the sums so paid and advanced, in the debts, stock, and bonds of the party of the first part.

The agreement provides that the parties of the first part will keep and run its steamers for 19 years to the satisfaction

of the parties of the second part. That the parties of the third part will, during said term, semi-annually reserve out of the gross receipts for transportation from said line of steamers the sum of $150,000, and pay it to the parties of the second part; that the party of the fourth part (the complainant) will, if requested, advance $600,000 for the same purposes, and to be *pro tanto* in lieu of the said semi-annual payments; that, if this is done, the parties of the third part will pay interest, semi-annually, at the rate of 8 per cent., to the complainant, and will pay into the hands of the presidents and treasurers, for the time being, of the plaintiff and defendant companies, such sums as shall, when invested as a sinking fund, in the judgment of said presidents and treasurers, pay all excess of the complainant's advances above $500,000, within two years from the date of the agreement, and the remainder at the end of 19 years; and, also, such sums as will, in the judgment of said presidents and treasurers, buy the existing mortgage bonds of the transportation company, within 10 years from said date. The said payments to the complainant, and to the trustees of the sinking fund, are to be in place of advances to the same amount as before provided, and are to be ultimately repaid out of the securities purchased by the parties of the second part. The fifth article concludes thus: "In no case shall payments to a sinking fund be less than amounts which, invested at 6 per cent. per annum, will produce the sum to be paid out of such sinking fund."

The agreement provides carefully, in article 7, how the parties of the second part shall carry out their trust. They are to procure, if possible, an extension of the time of payment of the mortgage bonds of the party of the first part; they may, if necessary to secure the running of the steamers, buy the debts of that company, whether secured by mortgage or not, and shall immediately transfer them to the trustees of the sinking fund, to be held in trust to pay, first, the sums advanced by the complainant, and next the sums paid, advanced, or lent by the parties of the third part, so long as the semi-annual payments of interest are made to the com-

plainant, and of sums for the sinking fund to the trustees thereof; but, if default is made in these payments, the trustees of the sinking fund shall, if requested in writing by the complainant, proceed to collect said debts, (that is, the debts of the transportation company,) and, out of the sums collected, pay the semi-annual interest, and hold the balance, if any, as part of the sinking fund; "and that all of said sinking fund shall finally, at the end of said term, be applied to pay all advances of the party of the fourth part; and, if any balance shall remain, the same shall be divided among the parties of the third part, in such proportion as they shall be entitled to; and, if said sinking fund shall prove insufficient, the parties of the third part shall make up the deficiency out of the gross receipts from said business, brought by steamers, as aforesaid."

The bill alleges that when the agreement was made the complainant's road, equipments, and appurtenances had been leased and demised to the Vermont & Canada and Vermont Central Railroads for 20 years, from March 1, 1870; that the complainant paid $600,000 to the parties of the second part, in accordance with the agreement; that the presidents and treasurers of the plaintiff and defendant corporations did fix and determine the amount to be paid semi-annually to the sinking fund; that the parties of the third part did, severally, thereafter pay the amount so fixed, in proportion to their respective shares of the gross earnings, until September 1, 1874, and have made no payments since that time, and that there remains due the complainant $392,000; that in January, 1875, proceedings were taken, by persons not parties to the agreement, against the Northern Transportation Company, and in February, 1876, their steam-boats and other property were all sold by order of court, and were no longer continued in said service of transportation; that the defendant company is bound to pay to the complainant such proportion of the sum remaining due them for advances as aforesaid, as the amount of gross earnings of the defendant from the said business bears to the total gross earnings of the parties of the third part. The bill alleges that this share is

not less than one-fourth, and asks for an account by which the precise proportion may be ascertained, and for payment of the amount found to be due, and other relief. The case was argued upon the bill and the defendant's demurrer. The theory of the bill is that the companies composing the party of the third part are absolutely bound to pay the complainant the sums advanced. The demurrer assumes that the payments are to be made only out of gross receipts from the Ogdensburg business.

Upon the most careful reading of the contract, we are of opinion that the parties of the third part have not bound themselves to pay this advance at all events. It may be difficult to see why the complainant should have made such a contract; but we must take it as it is. It seems to us that the parties of the third part were willing to rely upon the security which would be furnished by buying up the bonds, stock, and debts of the transportation company, and that the complainant trusted to that and the pledge of the gross earnings of the business. The agreement for securing the complainant seems to us to be summed up in the concluding part of article 7, that "if said sinking fund shall prove insufficient, the parties of the third part shall make up the deficiency out of gross receipts from said business, brought by steamers as aforesaid."

Upon this construction of the contract it becomes necessary that the bill should allege that there were gross receipts up to the time when the business was stopped, beyond what was paid to the sinking fund Besides this, the bill should either make the trustees, Smith and Stark, and the trustees of the sinking fund, parties, or allege (what we suppose is the truth) that they have nothing of value in their hands applicable to the payment of the complainant's advances.

If the other railroad companies, who, with the defendant, are parties of the third part, were citizens of this district, or found therein, it would be proper that they should be parties, in order that the total account of gross receipts should be taken in one suit. If they are not within the jurisdiction the suit will not be defeated, because the undertaking of each

party of the third part is several; the clause at the end of article 7 means that each company shall make up its part of the deficiency to the extent of its share of the gross receipts; and therefore it is a matter of convenience, and not of necessity, that all these parties should be joined.

On demurrer it does not appear that the corporations, whose homes are out of this state, could have been found within it.

The suit is not premature, because the contract has been abandoned through necessity, and the plaintiff is not bound to wait for the defendant to resume payments to a sinking fund which no longer exists, and which the defendant denies that it is bound to make.

We are of opinion that the whole gross receipts from the business mentioned in the contract, which accrued to the defendant during the time that the steamboats continued to run, are pledged·to the complainant; but that no payment can be demanded of the defendant beyond the amount of these receipts, and that the bill must be amended before an acccount of these receipts can be ordered.

Demurrer sustained.